IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JASMINE MOORE, | ) Civil No.: 3:15-cv-00918-JE |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

      Merrill Schneider
      Schneider Kerr Law Offices
      P.O. Box 14490
      Portland, OR 97293

           Attorney for Plaintiff

      Billy J. Williams, Acting U.S. Attorney
      Janice Hebert, Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204

      L. Jamala Edwards
      Special Asst. U.S. Attorney
      Office of the General Counsel
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 221 A
      Seattle, WA 98104-7075

           Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Jasmine Moore brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. The Commissioner concedes reversible error and moves the court to remand for additional administrative proceedings.

For the reasons set forth below, the Commissioner's motion for remand for additional proceedings should be denied. The Commissioner's decision should be reversed and this action should be remanded to the Agency for an immediate award of benefits.

## Procedural Background

Plaintiff filed an application for SSI on July 5, 2011, alleging she had been disabled beginning that same date.

After her claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

On August 6, 2013, a hearing was held before Administrative Law Judge (ALJ) Dan Hyatt. Plaintiff and Richard Hincks, a Vocational Expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated August 21, 2013, ALJ Hyatt found that Plaintiff was not disabled within the meaning of the Act.

On March 27, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

FINDINGS AND RECOMMENDATION – 2

## Background

Plaintiff was born in 1992 and was 21 years old at the time of the ALJ's decision. Tr. 51. She has an 11th grade education and was working on, but had not completed, her GED at the time of the hearing. Tr. 22, 194. She has no past relevant work. Tr. 194.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the date of her alleged onset of disability on July 5, 2011.

At the second step, the ALJ found that Plaintiff had the following severe impairments:

borderline intellectual functioning, learning disorder, attention deficit hyperactivity disorder, and anxiety disorder. Tr. 19.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Specifically, the ALJ found that Plaintiff did not satisfy the requirements of Listings 12.05 or 12.06. Tr. 20.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform a full range of work at all exertional levels but was limited to simple, repetitive, one-to-three step tasks; should have no public contact; and should have only occasional co-worker interaction. Tr. 21.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.

At the fifth step of the disability analysis, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited warehouse checker, office cleaner and laundry sorter as examples of such work. Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act since July 5, 2011, the date her application was filed. Tr. 25-26.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the

FINDINGS AND RECOMMENDATION – 5

burden of developing the record, <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends the ALJ erred by failing to conclude at step three of the sequential evaluation process that Plaintiff is presumptively disabled under Listing 12.05C. The Commissioner concedes that the ALJ erred in failing to fully consider the medical evidence but asserts that there remain unresolved issues that require further development.

Both parties agree that remand is required. The question then is whether to remand for additional proceedings or an award of benefits.

**I. Listing 12.05C**

The Social Security Regulations' "Listing of Impairments" is "designed to operate as a presumption of disability that makes further inquiry unnecessary." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532, 110 S.Ct. 885(1990). Conditions contained in the Listings are considered so severe that

"they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir.1995).

Listing 12.05 establishes the criteria for intellectual disability.[1]  20 C.F.R. § 404, Subpt. P, App. 1, 12.05. It is different from other mental disorder listings in that it contains an introductory paragraph with the diagnostic description for intellectual disability and four sets of criteria.  20 C.F.R. § 404, Subpt. P, App. 1, 12.00A. Under Listing 12.05, a claimant must satisfy the diagnostic description and any one of four sets of severity criteria – paragraphs A, B, C, or D. Id.

The diagnostic description provides that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. at 12.05. Paragraph "C," which is at issue here, requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § 404, Subpt. P, App. 1, 12.05C; see also Bowen v. Yuckert, 482 U.S. 137, 146, (1987).

The ALJ found that Plaintiff did not meet Listing 12.05C. Specifically, he stated that "[t]he claimant's IQ scores were in excess of listing level twice, in 2003 and 2005. The results of 2011 testing appear to be anomalous and are contrary to claimant's adaptive functioning and lack of a prior mental retardation diagnosis." Tr. 21.

---

[1] On September 3, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in the Listing of Impairments and other appropriate sections of its rules. 78 Fed.Reg. 46499, August 1, 2013.

The Commissioner argues that remand for further proceedings is appropriate because "the record casts doubt on Plaintiff's allegation that she is totally disabled." Def. Brief at 5. The Commissioner contends that the ALJ reasonably found that Plaintiff's activities of daily living, wide range of IQ scores and lack of a mental retardation diagnosis cast doubt on her most recent IQ scores and support the conclusion that Plaintiff was not "*per se* disabled." Def. Brief at 6-7. I disagree.

**A. IQ Scores**

Plaintiff argues that the ALJ erroneously rejected the intelligence testing performed in October, 2011 by consultative examiner, Dr. Gregory Cole, Ph.D.. An ALJ may find an IQ score invalid. See 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05C (requiring a "valid" IQ score to meet the Listing); Thresher v. Astrue, 283 F. App'x 473, 475 (9th Cir.2008) ("The regulations' inclusion of the word "valid" in Listing 12.05C makes the ALJ's authority clear.") The Ninth Circuit has "never decided what information is appropriately looked to in deciding validity." Thresher, 283 F. App'x at 475; however, an ALJ's rejection of otherwise valid scores should be supported by substantial evidence. Applestein-Chakiris v. Astrue, No. 09CV00009 BTM(WMC), 2009 WL 2406358, at *8 (S.D. Cal. Aug. 5, 2009)(ALJ may not reject scores "out of hand" without substantial evidence supporting his decision to do so).

Faced with multiple IQ scores, the Commissioner is required to use the lowest valid score for purposes of determining whether a claimant satisfies the requirements of Listing 12.05C. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §12.00D(6)(c). Courts in the Ninth Circuit have interpreted this to mean the lowest score across multiple IQ tests. Borders v. Colvin, No. 2:13–CV–01985–AA, 2014 WL 6901177, at *5 (D. Or. Dec. 3, 2014); Barnes v. Colvin, No. 3:14-CV-00979-HZ, 2015 WL 3514041, at *5 (D. Or. June 3, 2015); Ray v. Chater, 934 F.Supp. 347, 350 (N.D.

Cal.1996). Furthermore, the regulations state that the results of IQ tests "tend to stabilize by the age of 16," and IQ scores above 40 obtained between the ages of 7 and 16 are only valid for two years. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. §112.00D(10).

In April 2003, testing showed Plaintiff, at age 10, had a full-scale IQ of 78, a verbal IQ of 80 and a performance IQ of 80. Tr. 21, 368. In April 2005, Plaintiff had a full scale IQ of 79 and a verbal score of 91. Id.  In October, 2011, Dr. Cole administered intelligence testing. Plaintiff was 19 years old at the time. She had a full-scale IQ of 67, a verbal score of 72, a memory score of 74, a perceptual reasoning score of 71, and a processing score of 71. Tr. 21, 256. Dr. Cole wrote "throughout the testing, it can be noted that there was no evidence of poor effort or of inconsistency in [Plaintiff's] responses on the various tasks requested of her. Tr. 254. In the narrative portion of his report on Plaintiff's test results, Dr. Cole remarked that her scores placed her "in the extremely-low level of intellectual functioning." Tr. 256. In his concluding discussion, he indicated that Plaintiff exhibited

> intellectual deficits which are consistent with a diagnosis of borderline intellectual functioning . . . . [Plaintiff] actually was noted to have an extremely-low level of intellectual functioning from her intellectual testing; however, since she did not receive a diagnosis of mental retardation during her developmental period, and it is not believed that her adaptive behavior deficits would support such a diagnosis, it is believed that a more appropriate assessment of her intellectual status is borderline intellectual functioning.

Id.

As noted above, the ALJ stated that Plaintiff failed to meet Listing 12.05C because "[t]he claimant's IQ scores were in excess of listing level twice, in 2003 and 2005. The results of 2011 testing appear to be anomalous and are contrary to claimant's adaptive functioning and lack of a prior mental retardation diagnosis." Tr. 21. Despite this finding, the ALJ gave Dr. Cole's analysis significant weight, stating that it was "based on thorough testing . . . ." Id.

Here, the ALJ improperly rejected Plaintiff's 2011 IQ score of 67. Because Plaintiff's 2003 and 2005 scores were obtained when she was 10 and 12 years old, respectively, Plaintiff's 2011 scores are the only ones that may be considered valid. Plaintiff's 2011 testing resulted in a full-scale IQ score of 67, which is facially sufficient to meet the IQ requirement of Listing 12.05C. Nothing in the record supports the ALJ's perfunctory conclusion that the 2011 scores were "anomalous." The mere fact that Plaintiff's 2003 and 2005 scores were above the Listing level does not invalidate her 2011 scores, which were more recent and which were obtained after Plaintiff reached age 16, the age after which the regulations acknowledge scores tend to "stabilize." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §112.00D(10). Importantly, Dr. Cole himself did not find Plaintiff's scores invalid and, in fact, specifically wrote that there was "no evidence of poor effort or of inconsistency . . ." with regard to Plaintiff's performance during the testing. Tr. 254. The ALJ gave significant weight to Dr. Cole's opinion, stating that it was based on thorough testing. Tr. 21. For the ALJ to then reject the results of Dr. Cole's testing was both illogical and improper.

To the extent the ALJ relied on the absence of a diagnosis of mental retardation to invalidate Plaintiff's IQ score, such reliance was error. The absence of such a diagnosis does not preclude meeting Listing12.05C nor does it invalidate the IQ score. See Pedro v. Astrue, 849 F. Supp. 2d 1006, 1010 (D. Or. 2011) (concluding the ALJ erred by requiring a diagnosis of mental retardation to meet Listing 12.05C); Brooks v. Astrue, No. 3:11cv–01252–SI, 2012 WL 4739533, at *5 (D. Or. Oct. 3, 2012) ("by the plain language of the regulations, [plaintiff] may meet the listing without a formal diagnosis of mental retardation"); see also Stokes v. Astrue, No. CV 09–1264–PK, 2011 WL 285224, at *9 (D. Or. Jan. 4, 2011) (citing numerous other cases for the same proposition).

FINDINGS AND RECOMMENDATION – 10

The ALJ also concluded that Plaintiff's 2011 IQ scores were "contrary to [her] adaptive functioning." Tr. 21. The Commissioner argues that the ALJ based this conclusion on Plaintiff's activities of daily living. Def. Brief at 6. However, the ALJ's decision does not reflect this. The ALJ did note that Dr. Cole explained that Plaintiff's adaptive behavior deficits would not support a mental retardation diagnosis. Tr. 21. He later found Dr. Cole's opinion "to be consistent with [Plaintiff's] daily activities, which include the ability to care for her child, attend school, drive, do daily chores and socialize." Id. The ALJ offered no discussion of the relationship between Plaintiff's scores and her adaptive functioning deficits. Furthermore, Dr. Cole opined only that Plaintiff's adaptive behavior deficits would not support a mental retardation *diagnosis*, not that they invalidated her test scores. And, as noted above, the presence or absence of a mental retardation *diagnosis* is irrelevant for purposes of 12.05C.

In sum, Plaintiff's 2011 score of 67 satisfies the IQ requirement of Listing 12.05C. The ALJ's finding to the contrary was not supported by substantial evidence and was in error.

**B. Deficits in Adaptive Functioning Initially Manifested Before Age 22**

Neither the ALJ nor the Commissioner explicitly addressed the Listing's diagnostic description requirement that Plaintiff show evidence of deficits in adaptive functioning initially manifested before age 22. However, the ALJ did reference Plaintiff's adaptive functioning in his discussion of the validity of her IQ scores and Plaintiff has included discussion of this prong in her briefing. Therefore, in order to create a complete record for any further review, I will briefly address this requirement of the Listing.

A claimant may use circumstantial evidence, such as attending special education classes; dropping out of high school prior to graduation; difficulties in reading, writing or math; and low skilled work history, to demonstrate adaptive functioning deficits,. Pedro, 849 F. Supp. 2d at

1011–12. Here, there is no dispute that Plaintiff attended special education classes, had difficulty in math and writing, was often absent from and had a history of disruptive behavior in school, dropped out of high school after the 11th grade and had no work history. Tr. 19, 23, 194, 240-241, 362, 365. This is sufficient circumstantial evidence to meet this prong of Listing 12.05C. See id.

The ALJ and the Commissioner contend that because Plaintiff cared for her young child, attended school two nights a week, was trying to obtain her G.E.D., drove a car(albeit unlicensed), did daily chores and maintained her personal hygiene, she cannot be disabled. However, the record contains evidence demonstrating that Plaintiff had deficits in adaptive functioning prior to age 22. "The listing does not require more." Id. at 1014. Furthermore, courts in the Ninth Circuit have held that daily activities such as reading, driving, cleaning, and even child rearing are not necessarily inconsistent with intellectual disability. Id. ("[D]aily activities such as reading, driving, and cleaning are not necessarily inconsistent with [meeting Listing 12.05C]."); Huber v. Astrue, No. CIV–10–8043, 2010 WL 4684021, *4 (D. Ariz. Nov. 12, 2010)(same); Lewis v. Astrue, No. C 06–6608 SI, 2008 WL 191415, at *7 (N.D. Cal.2008) ("[c]laimant's ability to take care of herself and her children, though certainly physically and emotionally demanding, is no indication of the intellectual demand of those activities and is not inconsistent with being mentally retarded."); see also Gomez v. Astrue, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010) (noting that Listing 12.05C is structured differently than other mental disorder listings and that a claimant can satisfy Listing 12.05A–C "without having to demonstrate a disabling, or even severe, level of mental functional impairment").

After a thorough review of the record, and following the guidance of other decisions within this Circuit, I conclude that there is ample support to find that Plaintiff demonstrated

deficits in adaptive functioning initially manifested before age 22. Thus, to the extent the ALJ concluded that Plaintiff did not meet this requirement, his decision was not supported by substantial evidence and was in error.

**C. Impairment Imposing an Additional and Significant Work-Related Limitation**

In his decision, the ALJ stated that Plaintiff did not meet the paragraph C criteria of 12.05 because she did not have " a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related function." Tr. 21. However, the ALJ did not discuss the additional work-related limitation requirement and the Commissioner offers no argument that Plaintiff fails to satisfy this criteria.

If an ALJ finds an impairment to be "severe" at step two of the disability analysis, "that impairment necessarily has more than a slight or minimal effect on claimant's ability to perform basic work activities" and thus fulfills the third prong of Listing 12.05C. Pedro, 849 F. Supp. 2d at 1015 (citations omitted). Here, the ALJ concluded that, in addition to borderline intellectual functioning, Plaintiff also suffers from the following severe impairments: a learning disorder, attention deficit hyperactivity disorder, and an anxiety disorder. Accordingly, Plaintiff has satisfied the requirement of Listing 12.05C that she have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." See, e.g., McGrew v. Commissioner, 2015 WL 1393291, at * 5 (D. Or. Mar.25, 2015) ("The ALJ's finding at step two that Plaintiff had the severe impairment of an adjustment disorder with anxiety and depressive symptoms satisfies the work-related limitation requirement of Listing 12.05C.")(citations omitted). Campbell v. Astrue, 2011 WL 444783, at *18 (E.D.Cal. Feb. 8, 2011) ("Thus, a finding of severe impairment at step two is a *per se* finding of 'impairment imposing additional and significant work-related limitation of function' as employed in the second prong of Listing

FINDINGS AND RECOMMENDATION – 13

12.05C." (collecting cases)); see also Listing 12.00A ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c).").

## II. Remand

Based on the evidence in the record, the ALJ should have found Plaintiff presumptively disabled under Listing 12.05C. The ALJ's finding to the contrary was legal error and was not based upon substantial evidence. As such, the ALJ committed harmful, reversible error. See Molina v. Astrue, 674 F.3d 1104, 1115–17 (9th Cir.2012). Plaintiff is presumptively disabled and, therefore, there are no outstanding issues that must be resolved before a determination of disability can be made. Lester, 81 F.3d at 834 (remanding for payment of benefits because plaintiff met or equaled a Listing at step three).

The Commissioner argues, nonetheless, that "the record casts doubt on Plaintiff's allegation that she is totally disabled." Def. Brief at 5. This argument is unavailing. The test under the Act is not whether a plaintiff has "total disability," but whether she can perform in a competitive work environment on a regular and continuing basis; i.e., full-time. SSR 96-9p at *2; SSR 96-8p at *2. Furthermore, Plaintiff is presumed disabled under the Act by virtue of fulfilling the requirements of Listing § 12.05C. 20 C.F.R. § 404.1520(d). Additional development of the record will not change the fact that Plaintiff meets this Listing. Accordingly, remand for an immediate calculation and award of benefits is appropriate. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir.2014).

## Conclusion

For the reasons set out above, the Commissioner's motion for remand for further

proceedings (#20) should be DENIED. The Commissioner's decision should be REVERSED and this action should be REMANDED to the Agency for an award of benefits.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 27, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 10th day January, 2017.

                                                      /s/ John Jelderks
                                                      John Jelderks
                                                      U.S. Magistrate Judge